SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF COLUMBIA

SERVOTEC USA, LLC

                                    Plaintiff,          **SUMMONS**

        -against-

                                                        Index No.

RAUG AMMOTEC USA, INC., f/k/a PRECISION
AMMUNITION, LLC

                                    Defendant.

To the above named Defendant:

        **YOU ARE HEREBY SUMMONED** and required to serve a copy of an Answer
to the Verified Complaint in this action upon the undersigned within twenty (20) days
after the service of this summons, exclusive of the day of service, or within thirty (30)
days after the service is complete if this summons is not personally delivered to you
within the State of New York.  In case of your failure to answer, judgment will be taken
against you by default for the relief demanded in the Complaint.

Dated: November 30, 2010

                                        Jared P. Yaffee, Esq.
                                        William J. Better, P.C.
                                        Attorneys for Plaintiff
                                        One Albany Avenue
                                        Kinderhook, NY 12106
                                        (518) 758-1511

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF COLUMBIA

---

SERVOTEC USA, LLC

Plaintiff,

-against-

RUAG AMMOTEC USA, INC., f/k/a PRECISION
AMMUNITION, LLC

Defendant.

---

**VERIFIED
COMPLAINT**

Index No.

Plaintiff, by and through its attorneys, William J. Better, P.C., as and for a
Verified Complaint against the defendant RUAG Ammotec USA, Inc., f/k/a Precision
Ammunition, LLC, states as follows:

1.      Plaintiff Servotec USA, LLC was and is at all times relevant herein a New
York limited liability company engaged in the business of mechanical press
remanufacturing and tooling, with its principle place of business located in the City of
Hudson, Columbia County, New York.

2.      Defendant RUAG Ammotec USA, Inc., f/k/a Precision Ammunition,
LLC, is a Florida corporation engaged in the business of small-caliber ammunition
manufacturing, with its principle place of business located in the City of Tampa,
Hillsborough County, Florida, and is a wholly-owned subsidiary of RUAG, a Swiss
technology company headquartered in Bern, Switzerland.

3.      Thomas Tanguay ("Tanguay") was and is at all times relevant herein the
owner, President, and Chief Operations Officer of the plaintiff.

4.      Daniel L. Powers, Jr. ("Powers") was and is at all times relevant herein the
Chief Executive Officer of the defendant.

5.      Albert Newcomb ("Newcomb") was and is at all times relevant herein the
Vice President of Sales and Marketing of the defendant.

6.      On or about January 22, 2009, the defendant inquired about the plaintiff's
services to remanufacture five (5) of the defendant's munition loading V&O Presses,

which are industrial-sized punch presses used to manufacture small-caliber ammunitions, such as 9-millimeter, 40 S&W and 45 ACP bullets.

7.     V&O Press Company, which was located in Greenport, New York and manufactured V&O Presses, went out of business in or about 1987.

8.     Plaintiff, who occasionally employs former V&O Press Company employees, is the world's exclusive reseller of original V&O Press parts and service and owns the original V&O Press Company's engineering library.

9.     V&O Press Company's engineering library is the plaintiff's proprietary information; said library includes microfilms of press blueprints, designs and other information for every V&O Press model built, which includes information for the years 1909 through 1986 and other materials related to V&O Presses.

10.     The materials in the plaintiff's library are not known to the public or others in the plaintiff's trade.

11.     Plaintiff does not share information from its library with any unauthorized personnel.

12.     Plaintiff's proprietary information confers an economic advantage over those in similar businesses.

13.     V&O Press remanufacturing is a sophisticated, expensive, and time intensive process, which requires the use of numerous subcontractors.

14.     Plaintiff and the defendant communicated over the course of about five (5) months concerning the remanufacturing process for five (5) of the defendant's V&O Press loading munition presses.

15.     Defendant's presses were V&O Press models built in or about 1940.

16.     Plaintiff was the only company in the world that could rebuild and update the defendant's presses as originally designed by V&O Press Company.

17.     The communications between the parties evidence the development of a strong working relationship.

18.     In mid-June, 2009, the defendant shipped its five (5) presses with four (4) hoppers to the plaintiff in Hudson, New York.

19.     Plaintiff assigned its entire staff towards the remanufacture of the defendant's presses.

2

20.     Plaintiff also employed former V&O Press Company employees with over forty (40) years of experience.

21.     On or about June 22, 2009, the defendant issued five (5) purchase orders, copies of which are annexed hereto as Exhibit A.

22.     At the time of the purchase orders, the presses had not yet been evaluated; so, the price to remanufacture the presses was yet to be determined.

23.     Plaintiff issued five (5) invoices on or about June 23, 2010 for $10,000 each to disassemble the presses and evaluate the parts; the defendant paid the invoices.

24.     Plaintiff worked with engineering and machine subcontractors to review the presses and tooling.

25.     Plaintiff determined that 75-80% of the press parts were badly deteriorated and beyond repair; so, Plaintiff diligently made new parts for the press.

26.     The time required to research and design new parts and remanufacture the defendant's presses was extensive.

27.     Tanguay requested additional information from Powers on numerous occasions concerning how the defendant wanted to remanufacture the presses; Powers indicated that he would subcontract with other companies to provide certain equipment, such as sealant, and he needed to decide what parts the plaintiff would be responsible for creating.

28.     The process was delayed a number of times because the plaintiff had to wait for parts made by the defendant's subcontractors, as well as payment from the defendant for parts and the plaintiff's subcontractors' invoices.

29.     The process was also delayed because of the Powers's indecisiveness about the tooling of the presses; and, Powers ordered the incorrect sealants from his subcontractors on more than one occasion, which was not discovered until after the sealants had been made.

30.     Powers and Newcomb first visited the plaintiff's manufacturing site in Hudson, New York, between October 19, 2009 and October 21, 2009, to discuss the project with Tanguay and view the project's progress.

31.     Powers and Newcomb both provided positive feedback and expressed gratitude to Tanguay for the plaintiff's work.

3

32.    By letter dated October 26, 2009, Tanguay provided Powers a status report and memorialized the parties' agreement for the work to be performed at the plaintiff's site in Hudson, New York.  A copy of the letter is annexed hereto as Exhibit B.

33.    The October 26, 2009 letter also provided a firm quote of $139,998 for the cost of remanufacturing each press with a stand alone Hopper, for a total cost of $699,990; said letter also provided the terms for payment and options for additional parts.

34.    By this time, the defendant had made three (3) deposits totaling $150,000.

35.    By letter dated October 27, 2009, Powers ordered the plaintiff to cease work on the presses until he could get approval from the Board of Directors of the defendant's parent company, RUAG, because the project exceeded his budget.

36.    In said letter, Powers also confirmed the outstanding balance to date owed to the plaintiff.

37.    By letter dated October 28, 2009, Tanguay informed Powers that an expenditure report provided to Tanguay inadvertently omitted labor costs in the amount of $13,260; so, the outstanding balance was increased to $51,264.  Copies of the letter and expenditure report are annexed hereto as Exhibit C.

38.    Powers then informed Tanguay that the defendant's parent company, RUAG, only would authorize $500,000 to remanufacture the presses; however, he asked that the plaintiff invoice the defendant separately for third-party invoices, additional parts, such as a primer hopper, surround enclosures and other tooling parts, so that the defendant could have the presses as quoted and still show his parent company, RUAG, that the presses only cost $500,000.

39.    On or about November 11, 2009, Powers and Newcomb visited the plaintiff's manufacturing site in Hudson, New York to meet with subcontractors and discuss the project, at which time Powers and Newcomb again expressed that they were impressed with the plaintiff's work.

40.    Work resumed on the presses with Powers's authorization.

41.    On February 18, 2010, Powers informed Tanguay by email that the defendant needed the presses by March 31, 2010, ahead of schedule.  A copy of the email is annexed hereto as Exhibit D.

4

42.     Although the defendant wanted the presses by the end of March 2010, the defendant still had not defined the caliber of the tooling as of February 2010 and was indecisive throughout the process.

43.     On or about April 21, 2010, Powers and Newcomb visited the plaintiff's manufacturing site in Hudson, New York, and again provided positive feedback and expressed gratitude to Tanguay for the plaintiff's work.

44.     During said visit, Newcomb informed Tanguay that Powers was in serious trouble with the defendant's parent company, RUAG, because the presses were not finished yet; Tanguay told Newcomb that he would do whatever he could to move the project along, but Powers had not defined the primary sealant and the defendant's subcontractors had not finished the surround enclosures and additional necessary parts.

45.     Powers requested that the presses be finished as soon as possible; however, the defendant and the defendant's subcontractors caused repeated delays.

46.     Powers lacked any understanding of the time necessary to remanufacture the presses; although Powers alleged to have a significantly lower quote from another company that claimed it could remanufacture the presses and meet the defendant's deadline, it would have been impossible for the unnamed company to do so without evaluating or even seeing the presses.

47.     Additionally, the plaintiff expended considerable time and resources working around the defendant's subcontractor's mistakes.

48.     During said visit, Powers also videotaped the first working press without sensors or surround enclosures with his camera phone.

49.     In an act of good faith, Plaintiff drastically cut its labor charges to lower the price to $113,596.27 for each press for a total of $567,981.35.

50.     Plaintiff also salvaged and refurbished as many parts as possible to save the defendant a significant amount of money.

51.     Powers requested that the plaintiff invoice $67,981.35 separately for extra parts and labor so that he could show his parent company RUAG that the presses only cost $500,000.

5

52.     As requested by Powers, the plaintiff invoiced the defendant separately for additional parts and labor that were not part of the presses' original design in 1940 in the sum of $67,981.35.

53.     Powers told Tanguay that the defendant would pay for the plaintiff's staff to travel to the defendant's site in Florida to install and commission the presses.

54.     Plaintiff did not install its nameplate on the presses because Tanguay expected to do so when the presses were installed.

55.     On or about May 7, 2010, Powers and the defendant's shop foreman visited the plaintiff's site in Hudson, New York; at which time, one (1) press that the plaintiff had tooled was tested successfully without the parts from the defendant's subcontractors.

56.     Mechanically, the other presses worked, and Powers elected to take them early and hire other subcontractors to complete the tooling.

57.     Tanguay urged Powers not to take the presses until the subcontractors' parts were finished so that the plaintiff could install and commission the presses before they left the plaintiff's site, which would have been a matter of weeks.

58.     On or about May 11, 2010, Powers insisted on taking the presses and told Tanguay that the defendant would pay to have the plaintiff install and commission the presses on or about May 23, 2010 at the defendant's site in Florida

59.     Powers accepted delivery of the presses in Hudson, New York, and said presses were shipped to its site in Florida.

60.     Tanguay requested from Powers on numerous occasions the status of payment for the outstanding balance for remanufacturing the presses, as well as a schedule for the plaintiff to travel to the defendant's site to install and commission its presses.

61.     On June 8, 2010, Powers informed Tanguay by email that the invoices were being reviewed and that the status and condition of the presses were being evaluated. A copy of the email is annexed hereto as Exhibit E.

62.     Tanguay planned to visit Florida on another business matter at the end of June 2010 and asked Powers by email on June 24, 2010 if he would be welcome at that time to visit the defendant's site. A copy of the email is annexed hereto as Exhibit F.

6

63.     In an email on June 25, 2010, Powers informed Tanguay, who wanted to install, evaluate and create a DVD of the finished presses, that Tanguay would not be welcome at the defendant's site, as everything was being reviewed by its parent company, RUAG.  A copy of the email is annexed hereto as <u>Exhibit G</u>.

64.     Payments made by the defendant towards the final quote are listed as follows:

    a.  $50,000 on June 25, 2009;

    b.  $50,000 on August 19, 2009;

    c.  $50,000 on September 25, 2009;

    d.  $50,000 on November 17, 2009;

    e.  $50,000 on December 2, 2009;

    f.  $50,000 on December 22, 2009;

    g.  $50,000 on February 15, 2010; and

    h.  $100,000 on May 12, 2010

        i.  Per Powers's instructions, Tanguay applied the May 12, 2010 payment to the invoices for additional parts and applied its balance of $31,257.79 to the outstanding balance for the presses.

65.     In an email to Powers on June 28, 2010, Tanguay called attention to the fact that the plaintiff provided its services at a substantially reduced cost and that the plaintiff had accommodated Powers's last minute requests.

66.     On June 28, 2010, the plaintiff forwarded its invoice for the overdue balance in the sum of $118,742.21 to the defendant.  A copy of the invoice is annexed hereto as <u>Exhibit H</u>.

67.     Defendant did not question, object, or complain about any of the work performed by the plaintiff; indeed, Powers frequently complimented Tanguay for the plaintiff's work and expressed satisfaction with the remanufacturing process.

68.     Plaintiff skillfully remanufactured and updated the presses in accordance with its agreement with the defendant.

69.     Defendant also agreed to the plaintiff's price to remanufacture the presses in the sum of $567,981.37.

70.    At no time during the project did the plaintiff offer or agree to accept less than the final price of $567,981.37.

71.    Throughout the project's process, Powers told Tanguay that they would finish the project together.

72.    Defendant inexplicably cut off communication with the plaintiff after June 25, 2010.

73.    By letter dated August 1, 2010, the plaintiff made a final demand for payment of the outstanding balance. A copy of the letter is annexed hereto as Exhibit I.

74.    Plaintiff also provided notice in said letter that the defendant's failure to use the plaintiff to commission the presses voided its warranty.

75.    Tanguay subsequently learned from two of his subcontractors' associates that the defendant had hired the subcontractors to install and commission the presses, and that they were at the defendant's site in Florida as early as May 2010 working on the presses.

76.    Upon information and belief, the defendant's subcontractors, who had never installed and/or commissioned presses, experienced problems with said installation.

77.    Tanguay also learned from Aaron Groom of Berkshire Automation, his subcontractor, that the defendant had paid Berkshire Automation directly for its outstanding balance of $23,272.60 on or about July 21, 2010.

78.    As a result, the overdue balance owed to the plaintiff was reduced to $95,469.61.

79.    Upon information and belief, the defendant obtained the plaintiff's confidential, proprietary information, including blueprints, drawings, other materials from its engineering library, which constitutes a trade secret, and plans and other materials created by Berkshire Automation that were commissioned and paid for by the plaintiff.

80.    By letter dated August 17, 2010, the law firm Pisciotti, Malsch & Buckley, P.C. ("Pisciotti"), on behalf of the defendant, informed Tanguay that it was evaluating the plaintiff's demand for payment and that it would respond to the plaintiff's demand within two (2) weeks. A copy of the letter is annexed hereto as Exhibit J.

8

81.    Pisciotti failed to respond to the plaintiff's demand for the overdue amount owed to the plaintiff from the defendant.

## AS AND FOR A FIRST CAUSE OF ACTION

82.    Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs numbered "1" through "81" with the same force and effect as if set forth in full herein.

83.    Defendant submitted purchase orders for the plaintiff to remanufacture and update five (5) of its V&O Presses.

84.    Plaintiff performed fully under the terms of the agreement with the defendant.

85.    Defendant has failed to pay $95,469.61 under the terms of the agreement.

86.    Defendant breached the contract with the plaintiff, who has suffered damages in the amount of $95,469.61.

## AS AND FOR A SECOND CAUSE OF ACTION

87.    Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs numbered "1" through "86" with the same force and effect as if set forth in full herein.

88.    Defendant submitted purchase orders for the plaintiff to remanufacture and update five (5) of its V&O Presses.

89.    Plaintiff performed fully under the terms of the agreement with the defendant.

90.    Defendant accepted delivery of the remanufactured and updated presses without paying for them as promised.

91.    Defendant promised that the plaintiff would install and commission the presses at the defendant's site in Florida.

92.    Upon information and belief, the defendant had already contracted with the plaintiff's subcontractors to install and commission the presses.

93.    Defendant failed to pay for the presses.

94.    Defendant breached the implied covenant of good faith and fair dealing, and, as a result, the plaintiff has suffered damages in the amount of $95,469.91.

9

## AS AND FOR A THIRD CAUSE OF ACTION

95.     Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs numbered "1" through "94" with the same force and effect as if set forth in full herein.

96.     Plaintiff expended considerable resources over the course of twelve (12) months to fully perform under the terms of the agreement with the defendant.

97.     Defendant received five (5) remanufactured and updated presses and failed to pay for them.

98.     As a result, the defendant has been enriched in the sum of $95,469.91 at the plaintiff's expense.

## AS AND FOR A THIRD CAUSE OF ACTION

99.     Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs numbered "1" through "98" with the same force and effect as if set forth in full herein.

100.    Defendant submitted purchase orders for the remanufacture and update of five (5) V&O Presses.

101.    Plaintiff submitted a firm quote of $699,990.

102.    Plaintiff remanufactured and updated the presses according to the defendant's request.

103.    Plaintiff reduced its price to remanufacture and update the defendant's presses to $567,981.35.

104.    Defendant accepted the remanufactured and updated presses without objection.

105.    Plaintiff submitted an invoice for the overdue balance of $118,742.21.

106.    Upon information and belief, defendant paid $23,272.60 of the amount owed to the plaintiff directly to the plaintiff's subcontractor.

107.    As a result, the overdue balance was reduced to $95, 469.61.

108.    Defendant has failed to pay the amount due to the plaintiff under the terms of their agreement.

109.    Defendant owes the plaintiff for an account stated in the amount of $95,469.61.

## AS AND FOR A FOURTH CAUSE OF ACTION

110.   Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs numbered "1" through "109" with the same force and effect as if set forth in full herein.

111.   Defendant submitted purchase orders to the plaintiff to remanufacture and update five (5) presses.

112.   Defendant promised to pay the plaintiff for the plaintiff's services but failed to do so.

113.   Defendant promised that the parties would finish the project together and encouraged the plaintiff to continue working on the presses, notwithstanding the fact that the defendant had already contracted with the plaintiff's subcontractors to commission and install the presses.

114.   Plaintiff detrimentally relied on the defendant's promises when it expended considerable resources over the course of twelve (12) months to remanufacture and update the defendant's presses, including, but not limited to, manpower and finances for parts and subcontractors' labor.

115.   Had the defendant not promised to pay for the plaintiff's services, the plaintiff would not have allocated its manpower and finances to remanufacture and update the defendant's presses.

116.   Defendant defrauded the plaintiff out of the sum of $95,469.61.

## AS AND FOR A FIFTH CAUSE OF ACTION

117.   Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs numbered "1" through "116" with the same force and effect as if set forth in full herein.

118.   The materials in the V&O Press's engineering library, as well as the plaintiff's specifications and plans and commissioned specifications and plans from its subcontractors, are the plaintiff's proprietary information, which is not known to the public or others in the plaintiff's trade.

119.   Plaintiff does not share its confidential proprietary information with any unauthorized personnel.

11

120.    The V&O Press Company's engineering library and the plaintiff's specifications and plans constitute the plaintiff's trade secrets.

121.    Defendant, in bad faith, has obtained the plaintiff's trade secrets for its pecuniary gain.

122.    Defendant misappropriated the plaintiff's trade secrets, and, as a result, the plaintiff has suffered damages in the sum of $95,469.61.

## AS AND FOR A SIXTH CAUSE OF ACTION

123.    Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs numbered "1" through "122" with the same force and effect as if set forth in full herein.

124.    Plaintiff owns the original V&O Press Company's engineering library.

125.    The materials in said library, as well as the plaintiff's own specifications and plans and commissioned specifications and plans from its subcontractors, are the plaintiff's proprietary information, which confers an economic advantage to the plaintiff over its competitors.

126.    Defendant, in bad faith, has obtained the plaintiff's confidential proprietary information for its pecuniary gain.

127.    Defendant's misappropriation of the plaintiff's proprietary information has stripped the plaintiff of an economic advantage over its competitors, and, as a result, the plaintiff has suffered damages in the sum of $95,469.61.

## AS AND FOR A SIXTH CAUSE OF ACTION

128.    Plaintiff repeats and re-alleges each and every allegation contained in the paragraphs numbered "1" through "127" with the same force and effect as if set forth in full herein.

129.    Plaintiff will suffer immediate and irreparable injury, loss and damage, if the defendants are permitted to continue using or disseminate the plaintiff's misappropriated confidential proprietary information and trade secrets.

130.    No adequate remedy at law exists.

12

**WHEREFORE**, Plaintiff respectfully requests a judgment against Defendant under the first, second, third, fourth, fifth and sixth causes of action, together with such other and further relief as to the Court seems just and equitable.

Dated: November 30, 2010

Yours, etc.

Jared P. Yaffee, Esq.
William J. Better, P.C.
Attorneys for Plaintiff
1 Albany Avenue
Kinderhook, NY 12106
(518) 758-1511

13

VERIFICATION

STATE OF NEW YORK          )
                                              ) :ss:
COUNTY OF COLUMBIA    )

The undersigned, being duly sworn, says that he is the Owner, President, and Chief
Operations Officer of Plaintiff in the above-named proceeding and that the foregoing
complaint is true to his own knowledge, except as to matters therein stated to be alleged
on information and belief and as to those matters he believes to be true.

_____
Thomas Tanguay

Sworn to before me this 2nd th day of
November, 2010,

_____

**JARED PHILIP YAFFEE**
Notary Public, State of New York
No. 02YA6221726
Qualified in Albany County
Commission Expires June 7, 20

14

ATTORNEY CERTIFICATION

I. WILLIAM J. BETTER, HEREBY CERTIFY, under penalty of perjury, that I have no actual knowledge that the substance of any statements of fact contained in the annexed documents are false.  This Certification is based solely and exclusively upon information provided by the client, and upon the client's certification to the undersigned attorney that such information is not false, and is not based upon any review, audit, examination, inquiry or investigation made by the undersigned attorney or by anyone acting on behalf of said attorney.

(A)      PLEASE TAKE NOTICE THAT this Certification is made by the attorney as an Officer of the Court and is directed solely and exclusively to the Court in accordance with 22 NYCRR 202.16(e) and is expressly not directed or extended to the opposing party herein.

(B)      PLEASE TAKE FURTHER NOTICE that the opposing party may not and should not rely upon this Attorney Certification in assessing the truth or validity of the information contained in the annexed document.  The credibility contained in this submission is no greater than the credibility of the client represented by the undersigned attorney and the opposing party should give this document no greater credence merely because it bears this Attorney Certification.

DATED: November 30, 2010

_____
Jared P. Yaffee

# EXHIBIT A

RUAG Ammotec USA, Inc.
5402 E. Diana St.

Tampa FL 33610

2642

PURCHASE ORDER

P/O
P/O
BUYER

VENDOR:

Reinas USA, LLC
Industrial Tree
Suite 3
Hudson NY 12534

SHIP TO:

RUAG Ammotec USA, Inc
5402 E Diana St
Tampa FL 33610

| | | NET 30 DAYS |
|---|---|---|

| | V&O Machine Serial 601-TVS97 - Repair of Machine Price to be determined | EA ASAP | | 30 |

PURCHASE ORDER TOTAL

RUAG Ammotec US
5402 E. Diana St

2641

Tampa FL 33610

PURCHASE ORDER

P/O
P/O
BUYER:

VENDOR:

Sevictec USA, LLC
1 Industrial Trace
Suite 9
Hudson NY  12534

SHIP TO:
RUAG Ammotec US Inc.
5402 E Diana St
Tampa FL 33610

| | | NET 30 DAYS |
|---|---|---|
| Readway | Collect | |

Entered on 06/23/09 at 15:36

Vdo's Machine
Serial #012'7502 - Repair of
Machine. Price to be determin
ed                                              EA    ASAP

PURCHASE ORDER TOTAL

RUAG Ammotec USA
5402 E. Diana St.

Tampa FL 33610                                    2643

P U R C H A S E   O R D E R                          P/O
                                                     P/O
                                                     BUYER:

VENDOR:                          SHIP TO:

    Genesco USA, LLC.                RUAG Ammotec USA, Inc.
    Lindquist Trace                  5402 E. Diana St.
    Suite 3                          Tampa FL 33610
    Madison WI 13654

| Received | Output | NET 30 DAYS | | | |
|---|---|---|---|---|---|

| | | | | |
|---|---|---|---|---|
| V20 Machine | | FA   ASAP | | | .00 |
| Genii #012W996 - Repair of | | | | |
| Machine.  Priced to be determin | | | | |
| ed. | | | | |
| | | | | |
| PURCHASE ORDER TOTAL | | | | .00 |

RUAG Ammotec USA, Inc.
5402 E. Diana St.

Tampa FL 33610

*2639*

**PURCHASE ORDER**

P/O
P/O
BUYER

VENDOR:

Dynamic USA, LLC.
1 Industrial Trace
Suite 1
Hudson NY 12534

SHIP TO:

RUAG Ammotec USA, Inc.
5402 E. Diana St.
Tampa FL 33610

| | | | |
|---|---|---|---|
| Roadway | Collect | NET 30 DAYS | |

| | | | | |
|---|---|---|---|---|
| 1 | V&O Machine Serial #0123720G - Repair of Machine. Price to be determined. | EA | ASAP | .00 |
| | PURCHASE ORDER TOTAL | | | |

PRECISION AMMUNITION 8135268278

RUAG Ammotec USA, Inc.
5402 E. Diana St.

Tampa FL 33610

2640

P U R C H A S E  O R D E R

P/O
P/O
BUYER:

VENDOR:

Senvoteo USA, LLC.
1 Innovation Drive
Suite 5
Hudson NY 12534

SHIP TO:

RUAG Ammotec USA, Inc.
5402 E Diana St.
Tampa FL 33610

| | | |
|---|---|---|
| Running | Collect | NET 30 DAYS |

| | | | | | | |
|---|---|---|---|---|---|---|
| | Vdf Machine Serial #012W513 – Repair of Machine. Price to be determined | EA | ASAP | | | .00 |
| | PURCHASE ORDER TOTAL | | | | | .00 |

**EXHIBIT B**



**Servotec U.S.A.**
1 Industrial Tract Suite 3
Hudson, NY 12534
Phone: 518-671-6120
Fax: 518-671-6160

*Made in the U.S.A.*



www.servotecusa.com

October 26, 2009

Daniel L. Powers Jr.
CEO RAUG-Ammotec USA, Inc.
5402 E. Diana Street
Tampa, Fl. 33610

Dear Dan:

Thank you for choosing SERVOTEC USA, LLC and  for using our services for the complete remanufacturing of five (5) V&O Model 012W Casing & Primer loading munitions presses with Primer Hoppers. After your resent visit with Alan Newcomb we were able to discuss in detail the requirements each of us; RAUG Ammotec USA and SERVOTEC USA will be providing for this project. With this defined it allows me to provide a firm comment of cost for each press with one set of casing tooling; varnishing system for sealant to primers and mouth of the casing and stand alone primer hopper.

Your choice to use SERVOTEC USA for this project was a very wise decision since we are the only certified OEM provider of parts and services for the V&O Press Company Press lines. SERVOTEC USA owns ALL of the remaining assets to support the V&O Presses including O12W presses you sent into our Hudson, NY location.  These presses and all parts will be inspected to the original prints used to manufacture these presses when they were new; something no other press rebuilding vendors would be able to offer. The inspection and evaluation of the presses will be at our Hudson, NY site and includes the inspection of all major casting for fatigue. The presses and associated equipment will be warrantèd for one year, parts and labor once it has been determined there has been no negligent operation by the press owner. The press remanufacture will also include the up-grade of all passive and active safety equipment (guarding) necessary to bring the press to OSHA and ANSI standard requirements. The press will be shipped with all the safety controls required to prevent the primary operator and others from injury; however it is the responsibility of the press owner for selecting and installing any additional guards which may be required to meet State, Local and OSHA regulations.

SERVOTEC USA has disassembled four of the five presses sent (worst case) and we have determined that 75-80% of the press parts were so badly deteriorated they are beyond rework and will be replaced. All of the indexing tooling was disassembled and inspected completely and it too was found to have many parts seriously beyond reworking and these parts will be replaced and up graded to the latest revisions for these munitions presses built by the V&O Press Company for more than a thirty year period for the US Government and other munitions manufacturers around the world. The remanufacturing and up grade required many new patterns to make castings for the worn parts found both on the presses and the tooling indexing system. There were only four primer hoppers sent and this will require the complete building of one new primer hopper to support the fifth press, the remaining hoppers have been disassembled complete and these hoppers will be reworked and up dated with new primer

vibrating units as well as the gravity tracks that will provide the primer delivery to the press indexing turn-table. During our meeting, it as decided RAUG-Ammotec USA would purchase and provide all of the vibrating units from Performance Feeders, Inc.; SERVOTEC USA would purchase and provide all of the gravity tracks for the primer delivery and engineer the connection of the track from the hopper to the rear of the press and the primer turntable.

All five of the presses will be reassembled with state-of-the-art pneumatics made by Parker Hannifin; the safety monitoring valve for the clutch will be a Ross DM2 Series Double Valve, Ross Valves have proven to be the leader in required safety monitoring required to meet OSHA and ANSI standards for more than 60 years. All guarding will be electronically monitored by photo electric sensors or electronic lock out devises which will not allow for the operation of the press and indexing system unless ALL conditions to protect the operator and any others have been placed in the proper mode of operation. The operation of the press will be with a PC and controlled through a touch screen; all sensors and pneumatic will be monitored by the PC and any conditions of error will be displayed on the touch screen for the operator to view allowing him to correct the error condition before starting the press and indexing of the shell casings. The operation of the press and primer hoppers will be monitored to insure continuous operation; a warning light will let the operator know when a "low-level condition exists and should be addressed to keep a smooth and continuous production level. The fabrication of the 5th primer hopper is complete less assembly of the doors and special painting before final assembly; the remaining hoppers are being reworked and should be completed for return to SERVOTEC USA by end of this week.

The reassembly of the first 4 presses has begun and the presses are in varies stages of assembly with one press nearly complete and ready for the "bump-in" testing which is prior to the assembly of the bolster plate with the tooling. One set of tooling for 9MM is nearly complete and has been up graded to the latest design revisions; the press and tooling will be "married" once the "bump-in" has been finished which is usually 24-32 hours. This "bumb-in" process is always required on ALL of our press assemblies and especially where continuous press operation is required as with these O12W munitions presses with indexing dial feeds. Another set of 9MM and 40 S&W tooling are being readied for two of the other presses in assembly now; our goal is to "proof out" our design and up-grade before proceeding with the other presses. We designed the tooling with the intent it would be able to support two casing sizes using one dial indexing plate and minimal changes of tooling from the tool holder on the bottom of the press slide and the casing placement tool mounted on the front of the bolster plate. Once we have "proof" tested the tooling and made any adjustments necessary; this will allow the "change over" between different casing sizes to be quicker and reduce set up time; a positive benefit for RAUG-Ammotec USA.

Our engineering team has spent a great deal of time with the remanufacturing and up-grade of these munitions presses and primer hoppers. There is more work to be completed with defining the sealant of the primed casings and the mouth varnishing. We have had several meeting with Henkel-Loctite and will be testing there equipment next week to insure proper sealing of the primer and the drying before the casing has been delivered to its final destination. Our team is looking at the feasibility of completing the sealant of the primers and the mouth varnishing at one stage on the discharge track prior to the casings leaving the safety enclosure which surrounds the press and dial feeder; the other issue of concern is the method and equipment necessary to dry the sealant sufficiently before the casing has been delivered, these issues still need to be resolved. It was decided at our meeting RAUG-Ammotec USA will purchase and send ALL of the equipment required to apply the sealant and properly dry the sealant on the casing as it is moved along the discharge track to SERVOTEC USA for installation. SERVOTEC USA will provide the engineering required to attach the sealing equipment to the discharge track and also provide the system for applying the mouth varnishing to the casing.

During our meeting last week we discussed the "run-off" test and acceptance requirement; it was decided and agreed between RAUG-Ammotec USA and SERVOTEC USA the testing would take place here at our Hudson, NY location and be conducted by SERVOTEC USA.  It was further agreed that the testing would be acceptable if the press dial feed and indexing system could produce 20,000 casings meeting the SAMI requirements; primers and mouth varnishing completed and with minimal down time (15 minutes) over the 20,000 casing run;. The casing run will be at 80-85 casing per minute. RAUG-Ammotec USA will be notified of the "run-off" testing one week prior too the testing should they decided a representative of RAUG-Ammotec USA need be present to view the testing.

ALL of us at SERVOTEC USA are committed and resolved to finishing these five press systems before end of the 2009 year; with your help and that of RAUG-Ammotec USA personnel we will succeed. Based on our previous and continued conversation over the passed several months and the receipt of three (3) deposits totaling $150,000.00; SERVOTEC USA has with out hesitation continued to work on the full remanufacturing of these five (5) munitions press systems. The total definitive cost of each press system will consist of the following: one press completely remanufactured and up-graded to OEM new; one up-graded set of dial indexing tooling with customers choice of casing caliber; one remanufactured primer hopper complete with new vibrating system and delivery track;PC state-of-art electronics with touch screen control and monitoring; OSHA and ANSI safety monitoring equipment required to meet 21ST CENTURY regulations; remote diagnostic capabilities for future programming and trouble analyze should it become necessary; heavy inverter duty flywheel motor (explosion proof) with gear reducer; complete polycarbonate surround enclosure to protect personnel during operation and up graded sealant and mouth varnishing system. SERVOTEC USA will also provide 3 days of onsite set up and commissioning to the customer, should any additional time be required by the customer, it will be at the customer's expense and at SERVOTEC USA rate of $1200 dollars per day per technician.  Other arrangements for commissioning can be discussed between RAUG-Ammotec USA and SERVOTEC USA at a later date. The cost does not include crating or special air ride transportation to the customer's location; however SERVOTEC USA is willing to provide the crating necessary to insure the safe travel of the press and hopper at the customer's expense; this cost can also be discussed at a later date.

**Cost for one (1) 012W Indexing Dial Feed with stand alone Hopper $139,998.00**

**Terms: 40% With Purchase Order-5 press system total; less deposit received**
**30% once major component parts delivered**
**20% EX-Works Hudson**
**10% Net 30 days**
Options:
- Additional press parts to support operating presses
- Additional sets of caliber casing tooling (dial plate-etc.)
- Additional piece parts to support caliber casing tooling sets

Best regards,

TOM TANGUAY
PRESIDENT/CHIEF OPERATIONS OFFICER
SERVOTEC USA, LLC
1 Industrial tract, Suite #3
Hudson, NY 12534

# EXHIBIT C



### Servotec U.S.A.

Made in the U.S.A.

1 Industrial Tract Suite 3
Hudson, NY 12534
Phone: 518-671-6120
Fax: 518-671-6160



www.servotecusa.com

October 28, 2009

Daniel L. Powers Jr.
CEO RAUG-Ammotec USA, Inc.
5402 E. Diana Street
Tampa, Fl. 33610

Dan:

Regarding our conversation yesterday morning and receiving your fax telling me to cease working on all five (5) of your V&O presses until further notice; I need to inform you of something I just found out yesterday afternoon after talking with Susan; Susan prepared the expenditure report and was not aware she needed to add the labor hours to the expenditure up too yesterday.

The section on the expenditure list: **REMAINING OUTSTANDING VENDOR EXPENDITURES AFTER 10/02/09** only covered vendor cost and had no labor cost added. Susan told me the way we have been tracking the cost of the labor is recorded at the end of each month, so this was never added. I have tracked the labor for the month up to yesterday and the total hours are 204hours; this is starting 10-05-09 and ended 10-26-09. I did not charge labor for anyone's time yesterday since we just talked in the morning. I hope you can understand this was not intentionally left off and with us not knowing where this project is heading I still need to pay my people for working on your presses. The total cost for labor is $13,260.00 dollars.

Adding this to the balance of $38,004.00; the new balance owed to Servotec USA comes to **$51,264.00.**

ALL of us at SERVOTEC USA are disheartened over the present situation because we all have worked very hard to pull this involved and complex project together with full intentions of producing for RAUG-Ammotec USA a high quality piece of munitions equipment that will once again serve its customer for many, many years as it once did in the past.

Best regards,

Tom Tanguay
President/Chief Operation Officer
SERVOTEC USA, LLC



**One Industrial Tract
Suite #3
Hudson, NY  12534**

Phone – 518-671-6120          **www.servotecusa.com**          Fax – 518-671-6160

## PROJECT:

## RAUG – AmmoTec USA, Inc.
## Five 012W Case Primer Inserting Presses with Hoppers

Deposits Received to Date:                                    **$150,000.00**

Deposit Expenditures for:
  Start Date – 6/22/09 to 10/02/09

Electrical Design & Research                    $18,580.00

Mechanical Design & Research                    $13,445.00

Documentation Research/Development              $15,660.00

Tooling Disassembly/Clean/Inspection           $10,000.00

Castings & Development/Purchase                 $14,870.00

Machining/Fabrication Cost                      $16,687.00

Vendor Purchases/Parts/Other                    $20,896.00

Press Assembly of Four (4) Presses – Various Stages    $22,880.00

Total Cost of Expenditures for above Period =            **$166,788.00**

REMAINING OUTSTANDING VENDOR EXPENDITURES
**AFTER 10/02/09**                     $21,216.00

*REVISED FOR LABOR* 13,260.00

34,442.00

**EXHIBIT D**

**Tom Tanguay**

**From:**    Dan Powers [Daniel.Powers@ruag-usa.com]
**Sent:**    Thursday, February 18, 2010 6:00 AM
**To:**      Tom Tanguay
**Subject:** Status - Comments

Tom,

I want to make the following comments about our project and what I think the plan should be going forward.

1.  I really need all 5 completed by March 31, 2010. I need 3 of these in Florida NLT March 5th.
2.  I believe that once the tolling has been tested, this project will move much faster. I also understand that once one machine is working then all 5 will go quickly as well.

Per our discussions I would like the following:

1.  I will pay Aaron directly to mount , wire and label all the sensors on all 5 machines. I understand what you said about wanting to do it yourself; however, I understand Aaron's perspective on this. He is a lot like me and just wants to finish it, even if he shouldn't be worried.
2.  As for extra tooling etc. I don't want to order today any extra caliber changes. I would like the machines set up as follows:
    a.  Machine 1 – 9mm
    b.  Machine 2 – 40S&W
    c.  Machine 3 – 223 Rifle
    d.  Machine 4 – 45 ACP
    e.  Machine 5 – 38 Special

    I'll worry about extra calibers only once these machines are in my shop and we are producing ammunition. My bottle neck in production is these machines and I need them immediately to fill the orders we have in house.

3.  You can recommend what you believe we should have for ware parts. But again, let's worry about these after the fact and just work on the main machines.
4.  Bob should have all the brackets designed except two minor ones. He is almost complete on the primer sealing part as well.
5.  Have we ordered the additional controllers for the remaining two machines?

I appreciate everything you have done Tom. I just need to ensure we have these finished. They looked great when I was there and I know we are almost to the end and I'm getting very excited about using them.

Dan

Daniel L. Powers, Jr.
CEO
**RUAG Ammotec USA, Inc.**
5402 E. Diana St.
Tampa, FL 33610
Phone:       813-626-0077
Toll-Free:   888-393-0694

2/25/2010

### Tom Tanguay

**From:** Dan Powers [Daniel.Powers@ruag-usa.com]
**Sent:** Thursday, February 18, 2010 6:05 AM
**To:** Tom Tanguay
**Subject:** Machine Tooling

Tom,

Sitting down on a sheet of paper and I would like to change it to the following:

| Machine 1: | 9mm | |
| Machine 2: | 40 S&W | |
| Machine 3: | 223 Rifle | |
| Machine 4: | 45 ACP | Use Large Pistol Primer |
| Machine 5: | 308 Rifle | Use Large Pistol Primer |

Dan

Daniel L. Powers, Jr.
CEO
**RUAG Ammotec USA, Inc.**
5402 E. Diana St.
Tampa, FL 33610
Phone:      813-626-0077
Toll-Free:   888-393-0694
Fax:          813-626-0078

2/25/2010

# EXHIBIT E

**Tom Tanguay**

| | |
|---|---|
| **From:** | Dan Powers [Daniel.Powers@ruag-usa.com] |
| **Sent:** | Tuesday, June 08, 2010 4:38 PM |
| **To:** | Tom Tanguay |
| **Cc:** | Alan Newcomb |
| **Subject:** | RUAG Ammotec USA Project |

Tom,

We are currently reviewing this project in deal.  All invoices that were presented during my visit are being reviewed and the status and conditions of the machines are being evaluated.

Once we have completed this review, we will be in contact to discuss the status and/or future of the project.

Daniel L. Powers, Jr.
CEO
**RUAG Ammotec USA, Inc.**
5402 E. Diana St.
Tampa, FL  33610
Phone:       813-626-0077
Toll-Free:   888-393-0694
Fax:           813-626-0078

**EXHIBIT F**

**Tom Tanguay**

| | |
|---|---|
| **From:** | Tom Tanguay [tom@servotecusa.com] |
| **Sent:** | Thursday, June 24, 2010 1:18 PM |
| **To:** | 'Daniel.Powers@Ruag-usa.com' |
| **Subject:** | visit |

Dan;

Am I welcome to come and visit at Ruag-Ammotech, Tampa next week. I have heard nothing from you on anything and would like a reply positive or negative.
Tom

```
TOM TANGUAY
PRESIDENT/CHIEF OPERATIONS OFFICER
SERVOTEC USA, LLC
1 INDUSTRIAL TRACT, SUITE 3
HUDSON, NY 12534
PH; (518) - 671-6120
FAX: (518)-671-6160
(800)-926-8647
```

# EXHIBIT G

**Tom Tanguay**

| | |
|---|---|
| From: | Dan Powers [Daniel.Powers@ruag-usa.com] |
| Sent: | Friday, June 25, 2010 1:03 PM |
| To: | Tom Tanguay |
| Subject: | Re: visit |

Tom,

At the present time the answer would be no.  Everything is being reviewed with our corporate offices and some individuals in the U.S.


Daniel L. Powers, Jr.
CEO
RUAG Ammotec USA, Inc.
5402 E. Diana St.
Tampa, FL  33610
Phone:          813-626-0077
Toll-Free:          888-393-0694
Fax:                    813-626-0078



On Jun 24, 2010, at 1:15 PM, "Tom Tanguay" <tom@servotecusa.com> wrote:

> Dan;


> Am I welcome to come and visit at Ruag-Ammotech, Tampa next week. I have heard nothing
> from you on anything and would like a reply positive or negative.

> Tom


> TOM TANGUAY

> PRESIDENT/CHIEF OPERATIONS OFFICER

> SERVOTEC USA, LLC

> 1 INDUSTRIAL TRACT, SUITE 3

> HUDSON, NY 12534

> PH; (518) - 671-6120

> FAX: (518)-671-6160

1

# EXHIBIT H

# INVOICE



**Servotec U.S.A.**
Servotec U.S.A.
1 Industrial Tract
Suite 3
Hudson, NY 12534
**Phone-(518) 671-6120  Fax- (518) 671-6160**

| Date | Invoice No. | Customer No. |
|---|---|---|
| **7/28/2010** | **SEE BELOW** | **RAUG01** |

## BILL TO:

Attention: Accounts Payable
RAUG AMMOTEC USA, INC.
5402 E. Diana Street
Tampa, FL  33610

## SHIP TO:

Attention: Dan Powers
RAUG AMMOTEC USA, INC.
5402 E. Diana Street
Tampa, FL  33610

| P.O. No. | Terms: | Representative | Ship Date | Ship Via |
|---|---|---|---|---|
| **SEE BELOW** | **Overdue Balance** | **Tom Tanguay** | **5/11/2010** | |

PLEASE REMIT PAYMENT TO:
Accounts Payable
Servotec USA
1 Industrial Tract, Suite 3
Hudson, NY  1253

Item Description

### Five (5) Munitions Presses =

| | |
|---|---|
| Invoice - # 002639 | P.O. Number - 2004 |
| Invoice - # 002640 | P.O. Number - 2005 |
| Invoice - # 002641 | P.O. Number - 2002 |
| Invoice - # 002642 | P.O. Number - 2001 |
| Invoice - # 002643 | P.O. Number - 2003 |

### Remaining Balance Due=                $118,742.21

## OVER-DUE BALANCE.....PLEASE REMIT



TOTAL ➤ **$118,742.21**

Please pay this amount

We Appreciate Your Business
Terms (unless otherwise specified): Net 30 days 1 1/2 % interest will be charged on all past due accounts.

# EXHIBIT I



# Servotec U.S.A.

1 Industrial Tract Suite 3
Hudson, NY 12534
Phone: 518-671-6120
Fax: 518-671-6160

Made in the U.S.A.



www.servotecusa.co

August 1, 2010

Attention: Dan Powers, Jr., CEO
RUAG Ammotec USA, Inc.
5402 Diana Street
Tampa, Florida   33610

RE:   **FINAL DEMAND FOR PAYMENT**

Dear Dan,

It has been more than sixty (60) days since you were here in Hudson, NY, and approved the shipment of five (5) munitions presses, remanufactured and updated by SERVOTEC USA, LLC, to RUAG Ammotec USA, Tampa, Florida. Because I have not received any further correspondence from you since your e-mail dated June 8, 2010, this letter is:

**A FINAL DEMAND FOR PAYMENT**: immediate payment of the outstanding balance for the five (5) presses shipped from SERVOTEC USA, Hudson, NY in the amount of $ **118,742.21,** and;

**NOTICE OF WARRANTY VOIDED**: based on our last face-to-face conversation at SERVOTEC USA on May 12, 2010, you directly expressed you would be in contact with me as to when you would utilize the services of SERVOTEC USA for the installation and commissioning of the five (5) munitions presses. Your decision not to use SERVOTEC USA, LLC for the commissioning of the five (5) presses shipped from SERVOTEC USA, LLC Hudson, NY to RUAG Ammotec USA, Tampa, Florida voided any expressed or implied warranty, whatsoever, in the SERVOTEC USA, LLC documentation dated  October 26, 2009.

Your immediate attention to this **FINAL DEMAND FOR PAYMENT** is required. **Final payment is required within ten (10) business days from your receipt of this letter.**

Although I thought our nearly 12 month business dealing was based on trust and integrity, you have made me look at all legal resources to conclude our business should it become necessary. I am still amicable to a professional conclusion to our business however.

Sincerely,

Tom Tanguay, President/Chief Operations Officer
SERVOTEC USA, LLC

Cc:   Mark Seiger, Esq.
      Corporate Legal Council

# INVOICE

Servotec U.S.A.
1 Industrial Tract
Suite 3
Hudson, NY 12534
**Phone-(518) 671-6120  Fax- (518) 671-6160**

| | | |
|---|---|---|
| Date | Invoice No. | Customer No. |
| **7/28/2010** | **SEE BELOW** | **RAUG01** |

## BILL TO:

Attention: Accounts Payable
RAUG AMMOTEC USA, INC.
5402 E. Diana Street
Tampa, FL  33610

## SHIP TO:

Attention: Dan Powers
RAUG AMMOTEC USA, INC.
5402 E. Diana Street
Tampa, FL  33610

| P.O. No. | Terms: | Representative | Ship Date | Ship Via |
|---|---|---|---|---|
| **SEE BELOW** | **Overdue Balance** | **Tom Tanguay** | **5/11/2010** | |

PLEASE REMIT PAYMENT TO:                    Item Description
Accounts Payable
Servotec USA
1 Industrial Tract, Suite 3
Hudson, NY  1253

### Five (5) Munitions Presses =

| | |
|---|---|
| **Invoice - # 002639** | **P.O. Number - 2004** |
| **Invoice - # 002640** | **P.O. Number - 2005** |
| **Invoice - # 002641** | **P.O. Number - 2002** |
| **Invoice - # 002642** | **P.O. Number - 2001** |
| **Invoice - # 002643** | **P.O. Number - 2003** |

### Remaining Balance Due=                     $118,742.21

OVER-DUE BALANCE.....PLEASE REMIT



TOTAL ▶ **$118,742.21**

Please pay this amount

## We Appreciate Your Business

Terms (unless otherwise specified): Net 30 days 1 1/2 % interest will be charged on all past due accounts.

# EXHIBIT J

# PISCIOTTI, MALSCH & BUCKLEY, P.C.

————————————————— ATTORNEYS AT LAW —————————————————

NEW JERSEY OFFICE
30 COLUMBIA TURNPIKE
FLORHAM PARK, NJ 07932

TEL: (973) 245-8100
FAX: (973) 245-8101
www.pmblegalfirm.com

NEW YORK OFFICE
445 HAMILTON AVE.
SUITE 1102
WHITE PLAINS, NY 10601

TEL: (914) 287-7711
FAX: (914) 287-7715

August 17, 2010

**VIA FACSIMILE AND
REGULAR MAIL**

Mr. Tom Tanguay
Servotec U.S.A.
1 Industrial Tract, Suite 3
Hudson, NY 12534
(fax) 518-671-6160

     **Re:**   **Servotec U.S.A. Demand for Payment**

Dear Mr. Tanguay:

    Please be advised that we have been retained on behalf of RUAG Ammotec USA, Inc. ("RUAG") relative to the above-captioned matter. We kindly request that you forward all future correspondence concerning this matter to our office.

    We are in receipt of your claim and we are evaluating this matter. As such, we will respond to your demand within fourteen (14) days.

    In the interim, please do not hesitate to contact our office should you have any questions.

                Very truly yours,

        PISCIOTTI, MALSCH & BUCKLEY, P.C.

              Anthony M. Pisciotti

cc:   Mr. Daniel L. Powers, Jr.

Court Backer (Revised 4-98)

**STATE OF NEW YORK, COUNTY OF** _____ ss.: **AFFIDAVIT OF SERVICES**

,being duly sworn, depose and say: that I am over the age

of 18 years, not a party to this action, and reside at _____ . I served, on

, the within

Check
Applicable
box

Service by
Mail ☐ by depositing a true and correct copy of the same enclosed in a post-paid wrapper in an Official Depository maintained and exclusively controlled by the U.S. Postal Service within New York State, directed to said person(s) at respective said address(es) mentioned below, that being the address(es) within the state designated for that purpose upon the last papers in this action or the place where the below then resided or kept offices according to the best information which can be conveniently obtained.

Personal Service
on Individual ☐ by delivering a true copy thereof personally to each person named below at the address indicated. I knew each person served to be the person mentioned and described in said papers as a party therein.

Service by
Electronic Means ☐ by transmitting the papers by electronic means to the telephone number listed below, which number was designated by the attorney for such purpose. I received a signal from the equipment of the attorney served indicating that the transmission was received. I also deposited a true copy of the papers, enclosed in a post-paid wrapper, in an official depository maintained and exclusively controlled by the U.S. Postal Service, addressed to the attorney at the address set forth after the name below.

Overnight Delivery
Service ☐ by depositing a true copy thereof, enclosed in a wrapper addressed as shown below, into the custody of
_____ for overnight delivery, prior to the latest time designated by that service for overnight delivery.

If more than one box
is checked, indicated
after names the type
of service used.

Sworn to before me, this _____ day of _____

_____
(PRINT NAME BELOW SIGNATURE)

Notary Public – Commissioner of Deeds

**STATE OF NEW YORK, COUNTY OF** _____ ss.: **VERIFICATION**

,being duly sworn, depose and say that deponent is

in the within action; that deponent has

INDIVIDUAL {
read the foregoing _____ and knows the contents thereof; that
the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to
those matters deponent believes it to be true.

CORPORATION {
the _____ of _____ the corporation
named in the within action; that deponent has read the foregoing
and knows the contents thereof; and that the same is true to deponent's own knowledge, except as to the matters therein stated to be alleged
upon information and belief, and as to those matters deponent believes it to be true.
The grounds of deponent's belief as to all matters not stated upon deponent's knowledge are as follows:

Sworn to before me, this _____ day of _____

_____
(PRINT NAME BELOW SIGNATURE)

Notary Public – Commissioner of Deeds

**STATE OF NEW YORK, COUNTY OF** _____ ss.: **ATTORNEY'S AFFIRMATION**
or **CERTIFICATION**

The undersigned, an attorney admitted to practice in the courts of New York State,

Certification
By Attorney ☐ certifies that the within copy has been compared by the undersigned, with the original filed and found to be a true and complete copy thereof (pursuant to Sec. 2105 CPLR).

Attorney's
Affirmation ☐ shows deponent is the attorney of record, or of counsel with the attorney(s) of record for
_____ in the within action; deponent has read the foregoing
and knows the contents thereof; the same is true to
deponent's own knowledge, except as to the matters therein stated to be alleged on information and belief, and that as to those
matters deponent believes it to be true. This verification is made by deponent and not by

The grounds of deponent's belief as to all matters not stated upon deponent's knowledge are as follows:

The undersigned affirms that the foregoing statements are true, under the penalties of perjury.
Dated:

_____
(PRINT NAME BELOW SIGNATURE)

# State of New York

SUPREME **Court, County of** COLUMBIA

Index No.

Year

SERVOTEC USA, LLC

Plaintiff

– against –

RUAG AMMOTEC USA, INC. f/k/a PRECISION AMMUNITION, LLC

Defendant.

## VERIFIED COMPLAINT WITH EXHIBITS

WILLIAM J. BETTER P.C.

ATTORNEY AT LAW

ATTORNEY FOR

**Plaintiff**

Office and Post Office Address

1 ALBANY AVENUE
KINDERHOOK, NEW YORK 12106
(518) 758-1511

Due and timely service of a copy of the within is
hereby admitted on ...........................................

Signature (Rule 130-1.1-a)

.............................................................

Attorney(s) for

PRINT NAME BENEATH

..................................................

**NOTICE OF ENTRY**

Please take notice that the within is a true copy of a

duly entered in the office of the clerk of the within named court on

**NOTICE OF SETTLEMENT**

Please take notice that an order of which the within is a true copy will be presented for settlement to the
Hon.                                                                                                      one of the judges of the within named Court,

at

on                                            at                  M.

Dated,                                        Yours, etc.

WILLIAM J. BETTER

ATTORNEY AT LAW

To                                            ATTORNEY FOR

Attorney(s) for                               Office and Post Office Address

1 ALBANY AVENUE
KINDERHOOK, NEW YORK 12106
(518) 758-1511